IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRAD AVAKINA, COMMISIONER OF
OREGON BUREAU OF LABOR AND
INDUSTRIES, ex rel FAIR HOUSING
COUNCIL OF OREGON,

        Plaintiff,

and,

FAIR HOUSING COUNCIL OF OREGON,

        Plaintiff-Intervenor,

vs.

CHANDLER APARTMENTS, LLC fka
L&T CHANDLER, LLC, an Oregon
Limited Liability Company, et al.,

        Defendants.

Case No. 6:13-cv-1776-MC

ORDER

1 – ORDER

MCSHANE, Judge:

In my January 30, 2015 opinion granting plaintiffs' motion for summary judgment, I concluded that defendants were liable for violations of the Fair Housing Act (FHA) and corresponding Oregon statutes making it unlawful to: make a statement connected with the rental of a dwelling indicating any preference, limitation, or discrimination based on handicap (42 U.S.C. § 3604(c) and ORS 659A.145(3)); refuse to make reasonable accommodations when reasonable accommodations may be necessary to afford such person equal opportunity to use or enjoy a dwelling (42 U.S.C. § 3604(f)(3)(B) and ORS 659A.145(2)(g)); and discourage any person from inspecting or renting a dwelling because of handicap (24 C.F.R. § 100.70(c)(1) and ORS 659A.145(2)(d)). ECF No 98. I noted that up to that stage, defendants had brought forth, at best, "a token defense with no basis in law." *Id.* at 2.

On July 23, 2015, after oral argument on plaintiffs' motion for civil penalties and injunctive relief, I imposed $9,000.00 in civil penalties against defendants and granted plaintiffs limited injunctive relief to ensure future compliance with fair housing laws. ECF No. 127. In arguing against injunctive relief, defendants continued its token defense. In that opinion, I noted:

> It is difficult to assess the financial circumstances of the defendants. They have suggested on a number of occasions during the litigation that the penalties sought by the plaintiffs will force them into bankruptcy. Whether this constant refrain is tactical or grounded in financial reality is unclear. It is also apparent that the business practices of Mr. Tarantino are less than transparent. Much of the discovery in this case centered on determining just what business entities owned the property and which were no longer operative.
>
> * * * *
>
> Turning to the nature and circumstances of the violations and the degree of culpability, I find $9,000 is an appropriate civil penalty. . . . There remain disputed issues of fact. Tarantino disputes that his agent ever contacted him regarding any service animals. Lyons submitted declarations stating he brought those issues to Tarantino's attention and that Tarantino decided against making

2 – ORDER

> any accommodations. As summary judgment was appropriate even accepting
> Tarantino's version of events, this dispute of fact was immaterial. For purposes of
> this civil penalty, I assume Tarantino never learned of the requests and that this
> was all a "fraudulent prank" dreamed up by Lyons.
>
> That does not excuse Tarantino for his gross negligence here. He owned and
> managed a large apartment complex. He allowed a friend, with no experience and
> no training, to man the front desk, answer phones, show apartments, and generally
> field questions about rentals. Throughout the course of this litigation, it has been
> the constant refrain from defendants that they can escape liability because they
> allegedly did not expressly authorize Lyons to violate the FHA. Those arguments,
> which continue through their latest briefings, demonstrate a lack of understanding
> of the FHA and even basic agency laws.
>
> Also concerning is defendants' continued reliance on the fact that there was no
> discrimination in this case because no disabled person was ever denied
> accommodations. I addressed this in my earlier opinion but it bears repeating here
> as it is relevant to the degree of culpability. The use of non-disabled testers is an
> appropriate tool for bringing a claim under the FHA. Although defendants may
> not have expressly authorized the violations against testers purporting to seek
> housing, their actions in placing the untrained Lyons in a management-like
> position virtually guaranteed that some violations were likely to occur. The
> repeated and continued denials of liability and responsibility are troubling. It is
> clear defendants will never own responsibility for these violations.

ECF No. 127, 3-4.

Plaintiffs now move for attorney's fees and costs. ECF No. 131, 134, 136. Defendants do not object to any of the fees and the time to do so has passed. Instead, defendants move to essentially stay the attorney's fees issues pending the outcome of defendants' pending appeal in the Ninth Circuit Court of Appeals. ECF No. 142. Defendants' response simply continues the pattern established early and continued throughout this litigation. Once again, defendants supply little to no legal support for its arguments, relying instead on unsubstantiated claims that they will be forced into bankruptcy.

I agree completely with the arguments presented in plaintiffs' joint response. ECF No. 144. Citing *Hilton v. Barunskill*, 481 U.S. 770, 776 (1987), plaintiffs correctly point out that the standards for a stay pending appeal. ECF No. 144, 3. Those factors are:

3 – ORDER

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton*, 481 U.S. at 776.

Although all factors point toward denying the motion to defer ruling on fees, I need only turn to the first factor in denying defendants' motion. At least as it relates to the attorney's fees at issue, defendants have no likelihood of success on the merits of their appeal. I have repeatedly pointed out Tarantino's gross negligence virtually guaranteeing violations of fair housing laws.[1] I also explained in great detail why defendants' arguments that there could be no discrimination here because the case involved "professional liars" fails. ECF No. 98, 6-10. I discussed defendants' blatant distortions of the record. ECF No. 98, 8 (rejecting defendants' argument that the testers "neither described themselves as disabled nor identified their imaginary pets as real service animals."). I noted defendants' habit of taking citations out of context and ignoring contrary, dispositive evidence immediately following the portions cited by defendants. ECF No. 98, 9 (rejecting defendants' argument that the burden to inquire further is on the prospective tenant, not the landlord). Finally, I noted defendants' concession at oral argument that, despite being briefed by plaintiffs, and despite being potentially fatal to their case, defendants had not addressed or even considered the apparent authority issue. ECF No. 12.

Upon consideration of the facts admitted by Tarantino and basic agency law, it is clear defendants violated fair housing laws. Neither in its motion to defer ruling on fees, nor in any other briefing in this action, have defendants offered any legal arguments to rebut the

---

[1] Whether Tarantino was merely grossly negligent, or whether he acted intentionally remains a disputed fact. Because plaintiffs were entitled to summary judgment even viewing the facts in the light most favorable to defendants, that issue of fact did not need to be resolved here.

4 – ORDER

unavoidable conclusion that they violated fair housing laws.[2] At least on the legal issues leading to the vast majority of attorney's fees at issue, defendants have no likelihood of success on the merits of their appeal. Defendants' motion to stay, ECF No. 142, is DENIED.

BOLI moves for $74,516.81 in fees. ECF No. 131. Other than repeating their frivolous argument that they did not violate any fair housing laws, defendants do not object to any of the fees or costs, and the time to do so has passed.

As a prevailing party, BOLI and FHCO are entitled to their reasonable attorney fees. ORS 659A.885; 42 U.S.C. § 3613(c)(2). I turn to the reasonableness of the requested fees.

In determining a reasonable attorney fee, the court applies the lodestar method to determine the reasonable hourly fee, and then multiple that by the number of hours the attorney reasonably spent on the case. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Courts review the billing hours submitted to determine whether the prevailing attorney could have reasonably billed the claimed hours to a private client. *Id.* Hours that could not reasonably be billed to a private client are not recoverable. *Id.* at 1203. "[E]xcessive, redundant, or otherwise unnecessary" hours are not recoverable. *Id.* (quoting *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2008).

The Attorney General sets the billing rates the DOJ may charge clients such as BOLI. ORS 180.160. From July 1, 2013 to June 30, 2015, Assistant Attorneys General charged an hourly rate of $159 for attorneys (regardless of the attorney's experience), $79 for paralegal

---

[2] Although defendants repeatedly advanced their "professional liars" mantra, that is a frivolous argument ignoring longstanding Supreme Court precedent. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982); *see also Harris v. Itzhaki*, 183 F.3d 1043, 1049-50 (9th Cir. 1999).

5 – ORDER

services, and $52 for law clerks. ECF No. 131, 9.[3] The hourly attorney rate is 65% of the "average hourly billing rate" of private attorneys in Oregon in 2012. Ex. B to Englander Decl., 2. With over 310 billable hours, Nina Englander, with 4.5 years of experience, performed the bulk of BOLI's attorney hours. Portland attorneys with 4.5 years of experience bill $210 per hour on average. Englander Decl., Ex. B at 29. Stephanie Parent, with 23 years of experience, seeks 51.90 hours at $159.00 per hour. Comparable Portland attorneys charge $326 per hour. Parent Decl., ¶ 2. BOLI seeks a total of 366.50 attorney hours and 218.96 paralegal and law clerk hours for a total of $74,516.81.[4] Non-clerical work performed by paralegals and law clerks is recoverable as attorney's fees. *Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F.Supp.2d 1228, 1247-49 (D. Or. 2013). The hourly rates sought for paralegal and law clerk work is well below what has been awarded in this district for similar work. *See id.* at 1247. BOLI excluded over $10,000.00 from its fee request for hours spent on unsuccessful motions, duplicated hours, and clerical tasks. ECF No. 131, 7; Englander Dec., ¶ 5.

FHCO seeks $93,701.87 in fees and $610.37 in costs. ECF No. 136.

| Attorney/ Paralegal | Year | Hours | Hourly Rate | Total Fees |
|---|---|---|---|---|
| Dennis Steinman | 2012 | 1.90 | $360.00 | 684.00 |
| | 2013 | 40.10 | $375 | $15,037.50 |
| | 2014 | 57.95 | $390.00 | $22,600.50 |

---

[3] On July 1, 2015, the rates increased to $175 per hour for Assistant Attorneys General, $90 for paralegals, and $55 for law clerks. Englander Decl., ¶ 3. As most of the hours were spent before July 1, 2015, the increased rate only applies to 28.05 hours of the total requested hours of 585.46. ECF No. 131, 8.

[4] Included in the total is $877.31 in computerized research fees. Such fees are recoverable as attorney's fees. *Trustees of the Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258-59 (9th Cir. 2006). BOLI submits "block billing" statements, which are generally disfavored. But the DOJ billing system is not set up for itemized billing. Englander Decl. ¶ 6. BOLI's detailed submissions and declarations more than make up for any "block billing" concerns.

6 – ORDER

|  | 2015 | 30.25 | $405.00 | $12,251.25 |
|---|---|---|---|---|
| Scott J. Aldworth | 2013 | 16.80 | $195.00 | $3,276.00 |
|  | 2014 | 99.30 | $205.00 | $20,356.50 |
|  | 2015 | 56.30 | $215.00 | $12,104.50 |
| Matthew W. Lauritsen | 2015 | 22.20 | $300.00 | $6,660.00 |
| James D. O'Donnell | 2014 | 3.00 | $95.00 | $285.00 |
|  |  |  |  |  |
| **Total Hours** |  | 327.80 |  | $93,233.75 |
| **Computerized Legal Research** |  |  |  | $468.12 |
| **Total Fees** |  |  |  | $93,701.87 |

Dennis Steinman's hourly rates, while certainly on the higher end of the spectrum of Portland attorneys with similar experience, are reasonable under the circumstances. Mr. Steinman specializes in disability and fair housing litigation, representing FHCO in approximately 88 fair housing matters in the past 15 years. Steinman Decl., ¶ 3. Since 2000, Mr. Steinman has been an adjunct professor at Pacific University, teaching a class covering the FHA and the ADA. *Id.* at ¶ 2. Mr. Steinman conducted numerous CLEs and published several articles on the FHA, ADA, and disability law. *Id.*

According to the Oregon State Bar 2012 Economic Survey, the median hourly rate for Portland attorneys with similar experience is $250.00 per hours. Steinman Decl., Ex. 1, 3. The 95th percentile rate is $380.00 per hour. This rate falls in the middle of Mr. Steinman's hourly rate throughout this litigation. The survey rate appears to be an aberration, as the 95th percentile for Portland attorneys with 13-15 years experience is $435.00 per hour, with Portland attorneys

7 – ORDER

with 21-30 years experience charging $470.00 in the 95th percentile. *Id.* Given Mr. Steinman's longstanding expertise in FHA, ADA, and Disability law, his hour rates are reasonable.

Scott Aldworth charged $195.00 per hour in 2013, $205.00 per hour in 2014, and $215.00 per hour in 2015. These rates are near the 75th percentile for Portland attorneys with similar experience. Steinman Decl., Ex. A, 3. Mathew Lauristen's hourly rates are at the 75th percentile for Portland attorneys with 7-9 years of experience. The 3 hours of law clerk work at $95.00 per hour is reasonable. Steinman Decl., ¶ 9.

The requested hourly rates are reasonable. BOLI's rates are actually well below the prevailing market rate. FHCO's hourly rates are reasonable considering the experience and level of expertise of the FHCO attorneys.

The hours spent on this matter are also reasonable. While 585 and 327.80 hours represent a lot of time spent on this case, defendants are wholly to blame for the increased hours.[5] Defendants refused service, greatly complicating matters where there were so many entities and transfers of the property between the different entities. Defendants refused to respond to discovery requests, requiring plaintiffs to file motions to compel. Defendants filed inaccurate responses to the requests for productions and interrogatories, requiring extra work on the part of plaintiffs. Defendants fought summary judgment tooth and nail, even filing (without leave) a sur-reply on the very eve of oral argument. As discussed above and in my earlier orders, defendants blatantly disregarded the record and made arguments not supported by the record. Defendants' opposition to plaintiffs' filing of an amended complaint required full briefing (including a reply), after which I allowed the amended complaint over defendants' objections. Defendants refused to

---

[5] FHCA submitted 25 pages of detailed time sheets, which the Court reviewed for excessive or duplicative fees. Steinman Decl., Ex. 2.

8 – ORDER

agree to a standard protective order, requiring plaintiffs to file a motion, which I granted. Defendants agreed to meet with a settlement judge, but changed their minds three days before the settlement conference, after plaintiffs prepared for the conference and submitted detailed submissions to the settlement judge. Defendants required plaintiffs to spend hundreds of unnecessary hours on this case, furthering the courts belief that their only real defense in this action was to drive up attorney's fees while threatening bankruptcy. Defendants' ignorance of fair housing law and even basic agency law resulted in essentially all of the hours in this case, which almost certainly should have been resolved quickly at the administrative level or, at the very least, shortly after the filing of the civil complaint. Instead, with no basis in law or equity, defendants insisted on taking this case essentially to trial, fighting every step of the way. In short, the hours and rates are reasonable.

BOLI seeks $289.58 in costs for transcript fees, PACER or docket fees, and fees for service of process. All of the requested costs are recoverable by the prevailing party. *See* 28 U.S.C. § 1920. FHCO seeks $610.37 in costs. The costs stem from docket fees, service fees, and transcript fees. These costs are recoverable under § 1920.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

BOLI's motion for attorney fees, ECF No. 131, and bill of costs, ECF No. 134, are GRANTED. BOLI is awarded $74,516.81 in fees and $298.58 in costs. FHCO's motion for Fees and costs, ECF No. 136, is GRANTED. FHCO is awarded $93,701.87 in fees and $610.37 in costs. Defendants' motion to stay, ECF No. 142, is DENIED.

IT IS SO ORDERED.

DATED this 22 day of September, 2015.

                                                      Michael McShane
                                           United States District Judge